**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **BARNETT WILLIAM BASS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**KIMBERLY HARBER,**<br><br>**Defendant.** | **Case No. 23-cv-03008-SPM** |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Barnett Bass commenced this civil action while he was incarcerated at Pinckneyville Correctional Center pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

## THE COMPLAINT

Plaintiff alleges that while at Pinckneyville Correctional Center, on December 25, 2022, when Officer McVey brought him his lunch, he told McVey that he was declaring a hunger strike. (Doc. 1, p. 5). McVey said that he would inform Sergeant Harber. Several hours later, Plaintiff spoke to Harber himself. He requested for security to document his hunger strike and requested to speak to a member of the crisis team. (*Id.*). Harber told Plaintiff that he would remain in his existing cell until she has documented three meal refusals. (*Id.* at p. 12). She also denied his request to speak to a crisis team member. Harber told Plaintiff that there were only two people in health care and, "they don't have time for that." (Doc. 1, p. 12). Plaintiff then stated that he would refuse

housing and declare a hunger strike at the healthcare unit. Harber responded, "We aren't doing a hunger strike, crisis, or refusing housing." She sat with Plaintiff until he agreed to return to his cell. At one point, Harber told Plaintiff that he should be careful because she had "a lot of stroke around [here]." (*Id.*).

Plaintiff spoke to Sergeant Morgan and reported that he was calling a hunger strike. Morgan told Plaintiff that he would pass the information on to the "brass." (Doc. 1, p. 12). Morgan returned later and "reported that they said 'No.'" (*Id.*).

The next day, Plaintiff was told to pack his belongings, and Sergeant Harber escorted him to restrictive housing. (Doc. 1, p. 12). Harber told him that he would be receiving a disciplinary ticket for refusing housing. When the disciplinary ticket was issued to him, it was not for refusing housing but for disobeying a direct order. (*Id.* at p. 13). During the hearing on the ticket, Plaintiff was not permitted to call his witness. The ticket was later expunged. (*Id.* at p. 12).

## PRELIMINARY DISMISSALS

Plaintiff brings claims for violations of the Illinois Administrative Code. (Doc. 1, p. 13-14). These claims are dismissed. Section 1983 "protects plaintiffs from constitutional violations, not violations of state laws or…departmental regulations and police practices." *Thompson v. City of Chi.,* 472 F. 3d 444, 455 (7th Cir. 2006). Whether Defendant Harber complied with the Illinois Administrative Code is "completely immaterial as to the question of whether a violation of the federal constitution has been established." *Id.* For these reasons, Plaintiff's claims labeled as "Administrative Directives Violations" are dismissed with prejudice.

## DISCUSSION

Based on Plaintiff's allegations and his articulation of his claims, the Court designates the following counts:

**Count 1:** Eighth Amendment claim against Harber for disregarding hunger

strike protocols.

**Count 2:** Fourteenth Amendment claim against Harber for placing Plaintiff in restrictive housing and issuing him a false disciplinary ticket without due process of law.

**Count 3:** First Amendment claim against Harber for retaliating against Plaintiff for declaring a hunger strike and requesting to speak to a crisis team member.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

**Count 1**

Plaintiff alleges that at the time he interacted with Harber, he had already missed four meals. He states that Harber violated the Eighth Amendment by intentionally refusing to follow hunger strike protocols. Plaintiff asserts that Harber did not acknowledge his announcement of a hunger strike, failed to have him evaluated by medical staff, and denied his request to speak to a crisis team member. As for his injuries, Plaintiff admits that he did not experience any physical injuries but contends that due to Harber's actions he was under emotional distress, and his mistrust of staff increased. (Doc. 1, p. 5).

To state an Eighth Amendment claim for deliberate indifference, the plaintiff must plead that (1) the harm that befell him was objectively, sufficiently serious and a substantial risk to his health or safety; and (2) the individual defendants were deliberately indifferent to the substantial risk to his health and safety. *Collins v. Seeman,* 462 F. 3d 757, 760 (7th Cir. 2006).

Here, there are no facts from which the Court can infer Plaintiff's safety was at risk and

[1] *Bell Atlantic Corp. v Twombly,* 550 U.S. 544, 570 (2007).

that Harber was aware of substantial risk of danger or harm to him and ignored such risk. *See Seeman,* 462 F. 3d at 761 ("a request to see a crisis counselor, standing alone, is not sufficient to put a defendant on notice that an inmate poses a substantial and imminent risk of" harm to himself); *Owens v. Hinsley*, 635 F.3d 950 (7th Cir. 2011) (no deliberate indifference to medical needs where, after 25 days on hunger strike, inmate is taken to medical ward). The bases of Plaintiff's claim appears to be that she did not follow protocol after he declared his hunger strike, which as discussed above, is not sufficient to state a claim for a constitutional violation. Accordingly, Count 1 is dismissed.

**Count 2**

Prisoners are not entitled to Fourteenth Amendment due process protections unless they can establish the deprivation of a constitutionally protected interest in life, liberty, or property. *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995) (per curiam). A prisoner has no protected liberty interest in housing in the general inmate population, except in the rare instances that his restrictive housing conditions "constitute an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Thomas v. Ramos*, 130 F.3d 754, 760 (7th Cir. 1997) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). *See also Zimmerman v. Tribble*, 226 F. 3d 568, 572 (7th Cir. 2000) ("the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."). The Seventh Circuit Court of Appeals has indicated that when a term of segregation is limited, typically to periods of less than six months, "an inmate's liberty interest in avoiding segregation is limited or even non-existent." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 & n.2 (7th Cir. 2009) (collecting cases). *See also Lekas v. Briley,* 405 F.3d 602, 612 (7th Cir. 2005) (no due process violation for ninety days in disciplinary segregation); *Hoskins v. Lenear*, 95 F.3d 372, 374-75 (7th Cir. 2005) (no due process violation for sixty days in disciplinary

segregation); *Thomas*, 130 F.3d at 760-62 (no due process violation for seventy days); *Hardaway v. Meyerhoff*, 734 F. 3d 740, 744 (7th Cir. 2013) (no liberty interest implicated where inmate spent six months in segregation with a violent cellmate and "was permitted to use the shower and prison yard once every week").

In this case, the only descriptive detail Plaintiff provides about his time in restrictive housing is that his television was confiscated, and he was unable to communicate with family for a time. Not having a television and restriction on visitations and outside communications do not amount to the type of atypical conditions that create a cognizable liberty interest. *See Thomas*, 130 F.3d at 762 n.8 (there is no liberty interest in the loss of certain privileges); *Woody v. Zatecky,* 594 F. App'x 311, 312 (7th Cir. 2015). Absent any additional facts about his conditions while in restrictive housing, the Court is unable to find that a protected liberty interest was at stake or the right to due process of law was triggered under the Fourteenth Amendment. Count 2 is dismissed without prejudice.

**Count 3**

Plaintiff asserts that because he engaged in a peaceful protest through a hunger strike and because he requested to speak to a crisis team member Harber retaliated against him by having a false disciplinary ticket issued and placing him in restrictive housing. (Doc. 1, p. 12).

Plaintiff has sufficiently stated a claim for retaliation, and Count 3 against Harber will proceed. *See Czapiewski v. Pingel,* No. 16-CV-1709, 2017 WL 435803, at *2 (E.D. Wis. Feb. 1, 2017); *Thomas v. Wolfe*, No. 112-CV-443-JMS-DKL, 2016 WL 4592201, at *2 (S.D. Ind. Sept. 2, 2016); *Birdo v. Dave Gomez*, 214 F. Supp. 3d 709, 719 (N.D. Ill. 2016).

**DISPOSITION**

For the reasons set forth above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 3** will proceed against Defendant Harber. **COUNTS 1** and **2** are

**DISMISSED without prejudice.**

The Clerk of Court shall prepare for Harber the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendant's place of employment. If the defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

The defendant is **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, the defendant only needs to respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for

want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: March 15, 2024**

*s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.